## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **MICKEY LEE WILLIAMS** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No.: 3:15-cv-00415** |
| | ) | **REEVES/GUYTON** |
| **DOUG COOK,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Acting pro se, Mickey Lee Williams ("Petitioner") – an inmate at Bledsoe County Correctional Complex – brings this pro se Petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement pursuant to a 2004 judgment issued by the Grainger County, Tennessee Criminal Court. [Doc. 11-1; *see* Doc. 1 at 1]. A jury convicted Petitioner of second-degree murder and arson, and he is serving an effective sentence of twenty-four years' imprisonment. Respondent has filed an answer in opposition to the Petition [Doc. 21], Petitioner has replied to the answer [Doc. 22], and this case is now ripe for disposition.

## I.     BACKGROUND

### A.     State Court Proceedings

Petitioner was indicted by a grand jury in Grainger County, Tennessee, on August 19, 2002, and on April 21, 2004, his jury trial for first-degree murder, arson, and aggravated assault commenced. The Tennessee Court of Criminal Appeals summarized the evidence produced at trial:

> Around 11:30 A.M. on March 12, 2002, the Appellant and his longtime friend, Billy Joe Coffey, purchased three eighteen packs of beer which they began drinking at Coffey's residence in Rutledge. At approximately 2:30 or 3:00 P.M., the two went to the home of the Appellant's brother, Louis Williams, on Poor Valley Road in Grainger County to play cards and continue in their drinking endeavors. While there, the Appellant professed his love for Patricia Johnson. Johnson lived across the street from Louis Williams, and the Appellant made several visits to the Johnson home that

afternoon to see Mrs. Johnson. Coffey and his wife returned the Appellant to his home a little after 7:35 P.M. that evening. Coffey testified that the Appellant had drunk at least a case of beer.

Patricia Johnson, the victim's wife, testified that the Appellant came to her home on the afternoon of March 12th while her husband was away and asked whether "God would forgive him of murder." She responded that murder was wrong. Mrs. Johnson explained that she had developed a romantic relationship with the Appellant around October of 2001 when her husband was on the road for long periods of time as a truck driver and that she had tried to end the relationship in January of 2002 when she told her husband about the affair.

Johnny Bowens, who lived on Poor Valley Road near the Johnsons, testified that the Appellant came to his home on the evening of March 12th and cryptically "told [him] to watch and learn" and to "put it in the newspaper" before going up the road toward the Johnson house. Barbara Bowens, who also lived on Poor Valley Road, received a phone call from the Appellant on the night of the incident, inquiring whether the victim was at his house. She testified that she thought the Appellant was joking when he stated during the conversation that he loved Mrs. Johnson and was going to kill Mrs. Johnson's husband.

Around 9:30 P.M., the Appellant returned to the Johnson home. The victim, Terry Johnson, answered the door, and the two began to argue. Mrs. Johnson testified that her husband asked the Appellant to leave and told the Appellant that they would talk the next day. The Appellant walked out the door but quickly reentered with a six pack of beer, pointing his finger at the victim and calling him a son of a bitch. The Appellant then went back outside, and the victim followed. Barbara Bowens, Johnny Bowens, and Shawn Bolen, all neighbors on Poor Valley Road, heard what sounded like "a bunch of dogs fighting." Mrs. Johnson heard "grunting noises and thumping outside" and tried to call the police. Johnny Bowens and Bolen both testified that they saw the victim shove the Appellant first while on the porch. The victim was heard telling the Appellant to stay away from his family and get off of his property. The fight then moved to the yard. Soon thereafter, the victim was seen holding his stomach and retreating to his home with the Appellant following. The Appellant was yelling to the victim that "he [would] put his soul in hell." Mrs. Johnson testified that when her husband came inside, he told her to call the police. "[H]is right arm was cut, and he was holding his arm up, and his left hand was on his chest." Blood was everywhere. The victim went into the bathroom and closed the door. The Appellant then came inside the house and held a knife to Mrs. Johnson's throat and pushed her, along with her fifteen-month-old and five-year-old daughters, into the back bedroom. Afterwards, the Appellant beat on the bathroom door, yelling and screaming. Mrs. Johnson and her two children escaped through a bedroom window and hid in an old truck parked nearby.

Shawn Bolen testified that when he saw what was happening, he went to get the Appellant's brother Steve who lived down the street. The Appellant came out of the Johnson's house, and Steve called out to him. The Appellant walked to Steve's house with blood covering his pants and asked for a cigarette lighter. He made a slicing motion across his throat and said that Terry Johnson was dead and "had gone to hell."

Officer Jeff Daniel with the Rutledge Police Department testified that upon responding to the scene at the Johnson's home, he knocked on the door, but no one answered. There was blood both on the front porch and in the yard. Daniel drove up the road to Steve Williams' house, where Williams and Bolen were on the front porch. The Appellant was standing nearby with a knife in his hand and blood covering his pants. When Officer Daniel asked the Appellant what was going on, the Appellant responded, "I killed him.... He hit me.... I killed him.... And I'm tired of everybody out here." When Daniel tried to question him further, the Appellant walked back across the road to the Johnson's house. Officers at the scene asked the Appellant to come out of the house, but he refused, repeatedly opening and shutting the door. When asked for access to the house to check on the victim, the Appellant replied, "I'll drag him to you." He later announced, "He's too big. I can't drag him." Shortly thereafter, a fire was seen engulfing the interior of the house, and the Appellant was observed running from the residence. Upon exiting the house, the Appellant ran toward Chief Holt, who ordered the Appellant to drop the knife. The Appellant refused and was shot by Chief Holt.

Approximately four hours after the incident occurred, a blood sample was taken from the Appellant which indicated a blood alcohol level of 0.11 percent. Special Agent Russell Robinson with the State of Tennessee's Bomb and Arson Section investigated the murder and fire. He testified that the fire had multiple points of origin and concluded that it was "intentionally set." During the investigation, Robinson was forced to enter the bathroom through a window because the victim's body was against the door. Additionally, he noted that there were marks on the bathroom door which appeared to be made by a sharp-bladed tool. He found a Bic lighter on the kitchen table and a twenty-two inch hunting knife on the front porch. The victim's blood was found on the Appellant's pants and on the knife. Doctor Cleland Blake performed an autopsy on the victim. He described five deep stab wounds penetrating into the lungs and the vena cava, and he found the cause of death to be internal and external hemorrhaging.

At trial, the Appellant testified that on the night of the incident, he became intoxicated after drinking beer and did not know his purpose in going to the Johnson residence. He related that the victim hit him with a broom and tried to choke him, and, further, that he "didn't have no choice," that he "had to cut at [the victim]" to get him off. Regarding the fire, the Appellant testified that he was "probably trying to kill [himself]. I's panicked, scared. I don't know, really."

*State v. Williams*, 2005 WL 2240736, at *4-5 (Tenn. Crim. App. Sept. 15, 2005). On June 7, 2004, Petitioner was convicted by a jury of second-degree murder and arson, and the trial court imposed an effective sentence of twenty-four years. [Doc. 12-1 at 111-122; *see* Doc. 13 at 2].

On June 30, 2004, counsel filed a timely notice of appeal on behalf of Petitioner [Doc. 12-1 at 73]. However, counsel did not filed a motion for new trial within the thirty-day limitations period. On October 4, 2004, counsel filed a motion to set aside and reinstate final judgment in order to give Petitioner an opportunity to file a timely motion for new trial. In the motion, counsel conceded neglect in his failure to timely file a motion for new trial on Petitioner's behalf, acknowledging that his negligence resulted in the waiver of any trial issues "except sufficiency of the evidence and sentencing errors" on appeal [*Id*. at 74-75].[1] On October 27, 2004, counsel filed an untimely motion for a new trial on Petitioner's behalf, raising, *inter alia*, the following claims: (1) the trial court erred in allowing Billy Coffey to testify as to Petitioner's propensity for violence during the state's evidence; (2) the trial court erred by allowing Barbara Bowens to testify at trial, despite the fact that Petitioner was not given notice of her testimony until two days before trial; (3) the trial court's instructions to the jury regarding self-defense were erroneous; (4) the trial court's decision to sentence Petitioner above the presumptive minimum sentence based on aggravating factors not found by a jury violated the Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004); and (5) the evidence was insufficient to support the jury's verdict [Doc. 12-8 at 3-4]. The trial court denied the motion for new trial on November 8, 2004. Nonetheless, the court entered an amended judgment that same day, reducing Petitioner's effective sentence to twenty-three years; however, the record contains no oral or written statement of reasons for the one-year sentence reduction [Doc. 12-8 at 5, 7].

---

[1] There is no evidence in the record that the trial court ruled on the October 4, 2004 motion.

With the assistance of counsel, Petitioner proceeded with his direct appeal, reiterating the same claims of error asserted in the belated motion for new trial [*see* Doc. 12-9].  On September 15, 2005, the Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's convictions and sentences, concluding that: (1) the majority of Petitioner's claims had been waived by the untimely filing of his motion for new trial; (2) his sufficiency of the evidence claim was meritless; and (3) his *Blakely* claim was waived because it was not raised at the sentencing hearing and because it was lacking in merit pursuant to the Tennessee Supreme Court's decision in *State v. Gomez*, 163 S.W.3d 632 (Tenn. 2005) ("*Gomez I*") [Doc. 12-11].  It also held that the trial court was without jurisdiction to modify Petitioner's sentence in November 2004 and accordingly ordered the trial court to reinstate the original twenty-four year sentence [*Id*. at 5; Doc. 12-12 at 12].  The trial court entered a corrected judgment on September 29, 2005, re-imposing the original twenty-four-year sentence as ordered by the TCCA [Doc. 12-25 at 13].  Petitioner filed a petition for rehearing, which was denied [Doc. 12-12 at 20-21].  On February 21, 2006, the Tennessee Supreme Court denied Petitioner's request for permission to appeal the decision of the TCCA.  [Doc. 12-2 at 2-10; *see* Doc. 12-11 at 1].

On April 24, 2006, Petitioner initiated his pro se petition for post-conviction relief in the Grainger County Circuit Court, pursuant to Tenn. Code Ann. § 40-30-101, *et seq*.  [Doc. 12-13 at 7-11].  He was thereafter appointed counsel, and the petition was twice amended [*see* Doc. 12-13 at 18-19, 37-38].  On December 5, 2011, the post-conviction court ruled in Petitioner's favor as to a single claim of ineffective assistance of trial counsel, finding that trial counsel had been ineffective in failing to file a timely motion for new trial, thereby waiving numerous arguments for appeal [*Id*. at 91-92].  Accordingly, the court entered an order appointing counsel to file a motion for new trial within thirty days and granting Petitioner a delayed appeal [*Id*.].  However, all other issues raised in Petitioner's post-conviction petition – including various claims of trial court error and additional grounds of

5

ineffective assistance of trial counsel – were "dismissed with prejudice" without further discussion [*Id*. at 92]. The order was "Approved for Entry" by the attorneys for both parties [*Id*.]. Petitioner's attorney did not file an appeal of the court's order granting in part and denying in part his motion for post-conviction relief.[2]

Instead, on January 3, 2012, Petitioner's counsel proceeded with filing a new motion for new trial on Petitioner's behalf; an amended motion was thereafter filed, and after a change of counsel, several more amendments were made.[3] In addition to reasserting claims for ineffective assistance of trial counsel, sufficiency of the evidence, a *Blakely* sentencing violation, and those claims of trial court error reviewed only for plain error in Petitioner's original direct appeal, Petitioner set forth new grounds for relief, including a claim that the trial court erred in excluding the testimony of Richard McElhaney [*Id*. at 93-102; Doc. 12-14 at 2-3, 65-71]. On April 23, 2013, a hearing on Petitioner's motion was held; the court subsequently entered an order finding that (1) Petitioner's claims of ineffective assistance of trial counsel had been "waived" by the "agreed order" of December 5, 2011, granting his motion for post-conviction relief, and (2) the remainder of Petitioner's claims were without merit [Docs. 12-15 through 12-17].

On April 29, 2013, Petitioner filed his notice of delayed appeal, reasserting his arguments relating to the testimony of Billy Coffey and Barbara Bowens, the decision to exclude the testimony of Richard McElhaney, and the trial court's instructions as to the theory of self-defense; on February 4, 2014, the TCCA affirmed the trial court's denial of Petitioner's motion for new trial. *See State v.*

---

[2] At this time, Petitioner was represented by Mr. J. Derreck Whitson.

[3] After Mr. Whitson's motion to withdraw as counsel was granted, Petitioner was briefly represented by Mr. Chris Brown. Upon Mr. Brown's motion to withdraw, Ms. Heather McCoy was appointed to take over Petitioner's representation. Ms. McCoy represented Petitioner for the remainder of his delayed direct review proceedings at the lower court and appellate levels.

*Williams*, 2014 WL 465638 (Tenn. Crim. App. Feb. 4, 2014). The Tennessee Supreme Court denied Petitioner's request for permission to appeal on September 19, 2014 [Doc. 12-14 at 104; Docs. 12-23, 12-24].

Meanwhile, as counsel was pursing relief for Petitioner in his motion for new trial and delayed appeal proceedings, Petitioner continued pursuing relief in state court as a pro se litigant, filing numerous motions for post-conviction relief in Bledsoe County Criminal Court. Petitioner filed such a petition on July 10, 2012, alleging that his indictment was void [*see* Doc. 12-25 at 48, 53]. On August 1, 2012, the petition was dismissed for failure to state a claim, and no appeal was taken [Doc. 12-25 at 48-50, 53]. On February 25, 2013, Petitioner filed another petition for post-conviction relief raising claims regarding the inadequacy of his indictment, as well as claims relating to improper application or computation of jail credits [Doc. 12-25 at 3-9]. The petition was denied on March 18, 2013, the denial was affirmed by the TCCA on November 4, 2013, and Petitioner's application for permission to appeal to the Supreme Court was denied on April 9, 2014 [Doc. 12-25 at 52-54; Doc. 12-28; Doc. 12-29 at 1-7]. Petitioner filed a third post-conviction petition in January 2014, reiterating the same grounds for relief; the petition was dismissed as duplicative and meritless on July 5, 2014 [Doc. 1-15 at 14-15; Doc. 12-29 at 24-33]. On June 16, 2015, Petitioner filed another petition for post-conviction relief – this time, in Grainger County Circuit Court – which was denied on April 21, 2016; the record does not reflect that an appeal was taken [*see* Doc. 13-1].[4]

---

[4] Respondent did not include Petitioner's June 2015 petition in the record filed in this matter, instead attaching only the April 2016 denial order filed in Grainger County Circuit Court [*See* Docs. 12-1 through 12-29; Doc. 13-1].

### B.      Federal Court Proceedings

On September 16, 2015 – while his final state post-conviction petition was still pending – Petitioner filed his original Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court [Doc. 1]; on November 28, 2016, the operative Petition was later filed with leave of court [Doc. 11-1; *see* Doc. 17 at 2].   Respondent – Warden Darren Settles – filed his answer in opposition to the Petition on September 14, 2017, arguing that all of Petitioner's claims are either procedurally defaulted or lacking in substantive merit [Doc. 21].   On October 18, 2017, Petitioner then filed (1) a reply brief [Doc. 22], (2) a Motion for an evidentiary hearing [Doc. 23], (3) a Motion for discovery [Doc. 24], and (4) a Motion for appointment of counsel [Doc. 25].

## II.      LEGAL STANDARDS

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States.   28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994).

In addition, the following legal standards will be discussed and applied throughout this Order.

### A.      Procedural Default

A federal district court generally cannot entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition.   28 U.S.C. § 2254(b)(1).   While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine that promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of a prisoner's federal rights.   *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).   Consequently, as a condition precedent to seeking federal

habeas corpus relief, a petitioner is required to present the factual and legal bases for his claims to every available level of the state court system. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *O'Sullivan*, 526 U.S. at 845 (holding that state prisoners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *see also Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999); *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).

"It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the doctrine of exhaustion requires a petitioner to present "the same claim under the same theory" to the state courts as he seeks to present in federal court. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) ("A constitutional claim presented to the federal courts that does not rest on the same theory as was presented to the state courts is procedurally defaulted."). "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights are violated. *McMeans*, 228 F.3d at 681.

Once a petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).[5] By contrast, when a petitioner has failed to present the grounds of his claim to the state courts and has exhausted his grounds because no state remedy

---

[5] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state-court remedies. Tenn. Sup. Ct. R. 39; *see also Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (noting that Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas review).

remains available, his grounds are procedurally defaulted. *O'Sullivan*, 526 U.S. at 847–48. The prisoner will not be allowed to present unexhausted claims in a federal petition unless he can (1) show cause for his default and actual prejudice to his defense at trial or on appeal, or (2) "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[6] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### B.      Claims Adjudicated on the Merits by the State Court

For any claims that have been adjudicated on the merits by the state court, however, federal courts must utilize a "highly deferential" standard of review. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 88-89 (2011). Under this deferential standard, this Court may not grant habeas relief to a state prisoner unless the state court's decision on the merits of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 40-41 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (defining

---

[6] The Supreme Court has classified the exception for fundamental miscarriage of justice as applicable only in the most "rare" and extraordinary cases and has expressly tied the exception to a petitioner's claim of actual factual innocence based on newly discovered evidence. *See, e.g.*, *Bousley v. United States*, 523 U.S. 614 (1998); *Schlup v. Delo*, 513 U.S. 298, 321 (1995). There is no allegation of new evidence of actual innocence in this matter; indeed, Petitioner testified at his own trial and conceded his involvement in the circumstances leading to the victim's death, arguing that the death was the result of self-defense rather than murder. Such arguments implicate legal, rather than factual innocence. The Court accordingly finds that the miscarriage-of-justice exception is not implicated in the instant case and, as such, it will not be discussed further.

clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *see also, e.g.*, *Gordon v. Lafler*, 710 F. App'x 654, 658-59 (6th Cir. 2017), *petition for cert. filed*, (U.S. Jan. Apr. 11, 2018 (No. 17-1404)), (collecting cases for the proposition that "habeas relief is available if either the reasoning or the result of the state-court decision contradicts Supreme Court precedent") (internal alterations and quotations marks omitted)

The standards set forth in the AEDPA are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)); *see also Harrington*, 562 U.S. at 102 ("If [§ 2254(d)] is difficult to meet, that is because it was meant to be."). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

**C.     Ineffective Assistance of Counsel**

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel raised in federal habeas proceedings. *See Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the

defense so as to render the proceedings unfair and the result unreliable. *Strickland,* 466 U.S. at 687.

In assessing counsel's performance, a court must presume that counsel's questioned actions might have been sound strategic decisions and must evaluate the alleged errors or omissions from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Id.* at 689; *see also Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (quoting *Strickland*, 466 U.S. at 690). Only when the challenged actions are "outside the range of professionally competent assistance" will counsel's performance be considered constitutionally deficient. *Strickland*, 466 U.S. at 690.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. That is to say, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

## III.    PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

In his instant petition, Petitioner asserts numerous grounds for habeas corpus relief pursuant to § 2254, arising from his trial, sentencing, and collateral proceedings in state court [Doc. 11-1]. Respondent opposes each of Petitioner's grounds for relief. The Court will address each claim, applying the above standards.

## A.    *Brady* Violation (Ground 4)

Petitioner argues that the state withheld favorable evidence that could have supported his theory of self-defense – specifically, "that other knives were found at the crime scene including one on the floor and one in a fish tank – and that the failure to disclose these facts violated *Brady v. Maryland*, 373 U.S. 83 (1963) [Doc. 11-1 at 10, 29-30]. Conceding procedural default, he nonetheless argues that his default for this claim should be excused due to his attorney's refusal to raise and/or exhaust this claim in post-conviction proceedings [*see id*. at 11, 33].[7]

Because there is no constitutional right to an attorney in state post-conviction proceedings, "ineffective assistance of counsel in those proceedings generally cannot serve as a cause for procedural default." *Hill v. Mitchell*, 842 F.3d 910, 937 (6th Cir. 2016) (citing *Coleman*, 501 U.S. at 752. The Supreme Court has carved out a limited exception to this general rule, in which habeas petitioners may be able to use ineffective assistance of post-conviction counsel as "cause" for default. *See Martinez v. Ryan*, 566 U.S. 1 (2012). Specifically, the *Martinez* exception may apply only when a petitioner shows that:

> (1) he has a substantial claim of [ineffective assistance of trial counsel]; (2) counsel on initial state collateral review was nonexistent or ineffective; (3) the state collateral review proceeding was the initial review proceeding as to the [ineffective assistance of trial counsel] claim alleged; and (4) the state *requires* that the [ineffective assistance of trial counsel] claim be raised for the first time during the state collateral proceeding.

*Atkins v. Holloway*, 792 F.3d 654, 658 (6th Cir. 2015) (citing *Trevino v. Thaler*, 569 U.S. 413 (2013)) (emphasis original). Because the exception has been limited to "substantial claims of ineffective assistance of trial counsel," federal courts have routinely concluded that *Martinez* may not be used to

---

[7] Respondent perplexingly states that Petitioner "d[id] not acknowledge that this claim is procedurally defaulted, and he makes no argument that cause and prejudice exist to excuse the default" [Doc. 21 at 26-27]. However, as noted above, this statement is directly refuted by Petitioner's second amended petition.

13

overcome default as to other categories of claims, such as claims of structural error, prosecutorial misconduct, or trial court error. *See, e.g.*, *Prystash v. Davis*, 854 F.3d 830, 836-37 (5th Cir. 2017) (affirming rejection of *Martinez* exception as cause for default of a structural error at trial, noting that "[t]here is no need for *Martinez/Trevino* to come into play for . . . claims that can be brought on direct appeal"); *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (finding that *Martinez* exception did not allow Petitioner to excuse the default of claims of trial court error "because the Supreme Court limited [*Martinez*] to the default of substantial claims of ineffective assistance of trial counsel"); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (refusing to extend *Martinez* to a *Brady* claim defaulted by state post-conviction counsel).

In this case, it is undisputed that Petitioner's *Brady* claim is procedurally defaulted, but he seeks to invoke the *Martinez* rule to overcome his default. As this claim is not one of ineffective assistance of trial counsel, the Court finds that the *Martinez* exception cannot apply to demonstrate "cause" for Petitioner's default. Petitioner has identified no other grounds for cause for his default, and after a review of Petitioner's arguments and the record in this case, the Court concludes that Petitioner is unable to make such a showing.

Further, Petitioner's cannot demonstrate actual prejudice to overcome his default as to his *Brady* claim. *Brady* established that the prosecution's act of withholding of exculpatory records violates a defendant's constitutional rights. *See Brady*, 373 U.S. at 87. Respondent correctly notes that Petitioner's *Brady* claim is unsubstantiated, as he has failed to offer any evidence that there were in fact other knives found at the crime scene, let alone that the State withheld such evidence.[8] Without

---

[8] In reply, Petitioner argues that he did not find out about the "withheld evidence until after his direct appeal," and was never given a post-conviction hearing in state court, and as such, has "never had a hearing w[h]ere he could provide information that would support this ground" [Doc. 22 at 6-7]. Although Petitioner maintains that he has "supportive evidence" for this claim, he has failed

such evidence, the Court cannot conclude that Petitioner has demonstrated actual prejudice to overcome his default. Finding no basis upon which to excuse Petitioner's default, this claim for relief is **DENIED**.

### B.    Trial Court Errors (Ground 1)

Petitioner raises four grounds of trial court error, specifically, that the trial court: (1) erred in allowing Billy Coffey to testify regarding Petitioner's propensity for violence during the state's evidence; (2) erred by allowing Barbara Bowens to testify at trial, despite the fact that Petitioner was not given notice of her testimony until two days before trial; (3) erred in ruling that the testimony of Richard McElhaney, a witness for the defense, was irrelevant; and (4) erroneously instructed the jury regarding the theory of self-defense [Doc. 11-1 at 5, 18-25]. Respondent maintains that these grounds for relief are procedurally defaulted, as Petitioner challenged these rulings only pursuant to state law in his state-court proceedings, thus raising his federal claims for the first time in this federal action [Doc. 21 at 9-14]. Petitioner replies that these claims should be reviewed on their merits, as his appellate counsel's ineffective assistance in failing to "adequately federalize" these claims provides the court with grounds to excuse default [Doc. 22 at 2-3].

As the Court previously discussed, in order to properly exhaust a federal claim, a petitioner must have presented the factual and legal bases for his federal claims to every available level of the state court system. The Sixth Circuit has identified four actions that a petitioner can take in his state court proceedings which indicate that he "fairly presented" a federal claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to

---

to provide the Court with any such evidence, seek leave to supplement the record with such evidence, or even provide a description of the purported evidence [*see id.*].

allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681. As previously noted, general statements regarding the right to a "fair trial" or to "due process" are insufficient to "fairly present" a claim to the state court. *Id.*

These four claims of trial court error were asserted in Petitioner's belated motion for new trial, which argued that the alleged errors violated Tennessee law and the Tennessee Rules of Evidence.[9] [Doc. 12-13 at 93-102; Doc. 12-14 at 2-3, 65-71]. Petitioner thereafter appealed the denial of the these claims; although his brief included general statements regarding the "right to a fair trial," it framed the arguments of error as violations of Tennessee law and relied exclusively on citations to Tennessee cases, statutes, and evidentiary rules [Doc. 12-21]. The Court's review of Petitioner's arguments before the lower court and the TCCA fail to reveal that Petitioner relied upon state cases employing a constitutional analysis, phrased the claims with specific phraseology consistent with the vindication of federal constitutional rights, or alleged facts within the mainstream of federal constitutional law. Because Petitioner did not fairly present any federal claim related to these grounds for relief to the state courts, his claims of trial court error are unexhausted; because he can no longer raise these claims in state court, they are procedurally defaulted.

Notably, Petitioner expressly concedes that these claims were not "federalized" in state court and therefore not fairly presented.[10] Instead, Petitioner hangs his hopes on demonstrating cause to

---

[9] The claims regarding Coffey, Bowens, and the self-defense jury instructions were originally asserted in the untimely motion for new trial filed by trial counsel in October 2004; the TCCA found that the claims were waived but nonetheless found no error in reviewing the claims for plain error [Doc. 12-8 at 3-4; Doc. 12-11].

[10] Petitioner claimed in his amended § 2254 Petition that the claims were fully exhausted on delayed direct appeal [Doc. 11-1 at 5]. However, in his reply brief, he concedes that Respondent was correct in asserting that the federal basis for the claims was not fairly presented [Doc. 22 at 2-3].

overcome his procedural default. *See Coleman*, 501 U.S. at 750. Specifically, he argues that the Court should excuse his default because his attorney was ineffective in failing to adequately "federalize" these claims in the appeal of the denial of the motion for new trial [Doc. 22 at 2-3]. He states that "an adequate attorney should federalize a colorable claim to preserve it for future review" [*Id.*].

Petitioner relies upon *Burroughs v. Makowski*, 411 F.3d 665 (6th Cir. 2005), to support his argument.[11] In *Burroughs*, the petitioner asserted that his procedural default was caused by his counsel's failure to raise certain claims at the appropriate stage in state court. *Id.* at 667. Citing *Edwards v. Carpenter*, 529 U.S. 446 (2000), the Sixth Circuit noted that, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will establish cause [to overcome procedural default]. To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Id.* at 667-68 (alteration and internal quotation marks omitted). However, the Sixth Circuit ultimately concluded that Burroughs had procedurally defaulted any claim of ineffective assistance of appellate counsel in state court and that such a claim could "not now be used to show cause and prejudice for his undisputed procedural default on his other claims." *Id.* at 668; *see also Williams v. Lazaroff*, 648 F. App'x 548 (6th Cir. 2016) (holding that ineffective assistance of

---

[11] Petitioner also cited *Hand v. Houk*, 871 F.3d 390 (6th Cir. 2017), in support of this argument. In *Hand*, the Sixth Circuit confirmed that ineffective assistance of appellate counsel may excuse a petitioner's default, but concluded that Hand's appellate counsel was not ineffective because "mere failure to raise a potentially viable claim [of ineffective assistance of trial counsel]" is not deficient performance. *Id.* at 410-11. It did not reach the issue of whether an appellate attorney's failure to federalize a claim in state court constitutes ineffective assistance that constitutes cause to overcome default, noting that Hand had not raised this argument for cause and that Hand had defaulted any such claim by failing to raise ineffective assistance of appellate counsel in subsequent filings in state court. *Id.* at 419 n.9. The Court concludes that this case is of little to no relevance to the instant case.

appellate counsel could not serve as cause to overcome default of other procedurally defaulted claims given that it too was not fairly presented to the state court and was thus procedurally defaulted); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1076-77 (6th Cir. 2015) (noting that, in order to use ineffective assistance of appellate counsel as cause to overcome default, the claim of ineffective assistance of appellate counsel must have been fairly presented to the state court and must be meritorious in its own right); *Owes v. Waller*, 2006 WL 1207626, at *6 (M.D. Tenn. May 1, 2006) (noting that petitioner did not "claim in any state court . . . that appellate counsel on direct appeal was ineffective for not raising those claims at issue that should have been raised on direct appeal," and that he accordingly was not entitled to use ineffective assistance of appellate counsel as cause to excuse the default of those claims); *Coleman*, 501 U.S. at 755 ("We reiterate that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation.")

Applying this standard to Petitioner's case, it is clear that he is not entitled to use ineffective assistance of appellate counsel as cause to overcome procedural default of these claims. While his delayed appeal was still pending, he filed a "motion to file a supplement brief," arguing that "counsel has <u>failed</u> to raise all my issues that have very strong merit"; however, he did not specify what those issues were and did not indicate that he wished to add corresponding federal claims to those claims already raised in the appeal [Doc. 1-12 at 2-3 (emphasis original)]. The TCCA denied the motion, advising Petitioner that he could not file pro se motions while represented by counsel and that the determination of which issues to raise on appeal "is generally within appellate counsel's sound discretion" [Doc. 1-12 at 1]. Despite the fact that Petitioner filed numerous collateral motions parallel and subsequent to his delayed appeal, he failed to assert any claim of ineffective assistance of appellate counsel in those proceedings, let alone a claim that appellate counsel was constitutionally ineffective

based on her failure to federalize the claims raised in the delayed direct appeal.[12]   Accordingly, Petitioner's claim for ineffective assistance of appellate counsel is itself procedurally defaulted and cannot now be used to show cause and prejudice for his undisputed procedural default on his claims of trial court error.

The Court also notes that Petitioner has not identified any actual prejudice to overcome default of these claims.  The TCCA ultimately concluded that, even to the extent that the trial court erred, any errors were harmless due to the "overwhelming" evidence of Petitioner's guilt and the trial court's oral correction of its initially erroneous jury instruction on self-defense [Doc. 12-23 at 4-6].  Upon review of the record in this case, the Court agrees that any such errors were ultimately harmless; as such, the Court concludes that Petitioner is unable to demonstrate the actual prejudice necessary to overcome his procedural default of these federal claims.  Thus, the Court finds no basis upon which to conclude that Petitioner should be permitted to proceed on these procedurally defaulted claims, which must be **DENIED**.

### C.     Sufficiency of the Evidence (Ground 2)

Petitioner next argues that the evidence presented at trial was insufficient to support the jury's finding that Petitioner was guilty of second-degree murder [Doc. 11-1 at 7, 26].  He argues that the proof at trial – that "defendant engaged in an argument with the victim," that the "victim first struck the defendant and then the two began to have mutual combat," during which "the victim was apparently cut and withdrew to the bathroom of the house where he locked himself in and ultimately bled to death – is sufficient to establish, at most, the offense of voluntary manslaughter" [*Id*. at 26].

---

[12] Notably, even in these proceedings – where Petitioner now generally frames these claims in terms of Fifth Amendment Due Process guarantee – Petitioner has continued to rely solely upon state case law and Tennessee Rules of Evidence to argue that he did not receive a fair trial due to these errors, individually or collectively [Doc. 11-1 at 5, 18-25].

Respondent contends that the state court accurately summarized the evidence presented at trial, correctly applied the relevant legal standards, and concluded that there was more than enough evidence to support a conviction for first-degree murder – let alone second-degree murder, for which Petitioner was ultimately convicted – and maintains that Petitioner has failed to demonstrate that these factual or legal determinations were unreasonable or contrary to federal law [Doc. 21 at 14-17].

Petitioner presented this claim on direct appeal, and the TCCA analyzed it as follows:

On appeal, the Appellant asserts that the proof adduced at trial would only justify a finding of voluntary manslaughter. He contends that "the victim first struck the [Appellant] and then the two began to have mutual combat." The State argues the evidence was sufficient based on the Appellant's plan to kill the victim. We agree with the State.

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Under our current code, second degree murder is defined as the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (2003). Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn.

Code Ann. § 39-13-211(a) (2003). "The essential element that ... distinguishes these two offenses is whether the killing was committed 'in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.'" *State v. Williams*, 38 S.W.3d 532, 538 (Tenn. 2001) (quoting Tenn. Code Ann. 39-13-211(a)).

In this case, the trial court instructed the jury concerning the elements of the indicted offense of first degree murder, as well as the lesser included offenses of second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide. The court also instructed the jury as to the difference between second degree murder and voluntary manslaughter. Considering the evidence in a light most favorable to the State, the evidence overwhelmingly shows that the Appellant had voiced his desire and intent to kill the victim throughout the day. Indeed, the Appellant told Mr. Bowen to "watch and learn." Ignoring the apparent hostility between the two, the Appellant, armed with a hunting knife, entered into the Johnson property looking for the victim. After refusing to leave as requested, the Appellant repeatedly stabbed the victim with a twenty-two inch hunting knife. The Appellant then chased the victim into his house proclaiming that "he [would] put his soul in hell." Clearly, these facts demonstrate a "knowing" killing of the victim. *See* Tenn. Code Ann. § 39-13-210(a)(1).

By its verdict of guilt for second degree murder, the jury implicitly rejected the Appellant's arguments that he acted in self defense or in passion resulting from adequate provocation. Based upon the proof at trial, we conclude that the evidence is legally sufficient to support the Appellant's conviction for second degree murder beyond a reasonable doubt.

*State v. Williams*, 2005 WL 2240736, at *4-5 (Tenn. Crim. App. Sept. 15, 2005).

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for resolving claims of insufficient evidence. *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000), *superseded on other grounds as recognized by Parker v. Matthews*, 567 U.S. 37 (2012). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

A habeas court reviewing a challenge to the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6-7 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'") (quoting *Jackson*, 443 U.S. at 326). Additional deference is owed to the state court's consideration of the trier-of-fact's verdict pursuant to the highly deferential standards of the AEDPA. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review."). Hence, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

In this case, the state court set forth the appropriate federal standard from *Jackson* applicable to Petitioner's arguments regarding the sufficiency of the evidence and accurately summarized the evidence presented at trial. The Courts finds no error in the state court's application of *Jackson* to the facts from Petitioner's trial or in its ultimate conclusion that the evidence, viewed in the light most favorable to the government, supported the jury's verdict. Petitioner has failed to set forth any valid reason that the Court should decline to give deference to either the state court's resolution of this claim for relief or the jury's verdict itself. Because the Court concludes that the state court's resolution of Petitioner's claim of insufficiency of the evidence was neither contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of facts based on the evidence, this claim for relief pursuant to § 2254 must be **DENIED**.

### D. Ineffective Assistance of Counsel (Ground 5)

Petitioner has alleged ineffective assistance of trial counsel, as well as ineffective assistance by the attorneys who represented him in his post-conviction and delayed appeal proceedings. The claims will be addressed in chronological order.

#### 1. Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel was ineffective because he failed to: (1) challenge Petitioner's "fatally defective" indictment for first-degree murder prior to trial; (2) conduct an adequate investigation into pre-existing damage at the crime scene; (3) request a bill of particulars; (4) interview witnesses and/or adequately prepare for cross-examination of witnesses; (5) challenge the second-degree murder conviction as inconsistent with the indictment; (6) impeach Coffey's credibility with evidence of prior convictions and/or evidence that he was a known informant; (7) call witnesses in his defense, including Elizabeth Bowens, McElhaney, and Petitioner's sister; (8) object when a witness who had already testified for the state went to a room where the other state witnesses who had not yet testified were gathered; (9) discuss Petitioner's wounds, medical records, or potential DNA testing with Petitioner; and (10) object to the court's sentence above the presumptive minimum[13] [Doc. 11-1 at 12]. Respondent asserts that Petitioner's claims of ineffective assistance of trial counsel were not exhausted as they were not presented to the TCCA [Doc. 21 at 28]. Petitioner concedes his procedural default, but raises several arguments as to why his default should be excused.

---

[13] Petitioner also argues that trial counsel was ineffective in failing to file a timely motion for new trial [Doc. 11-1 at 33]. Although Petitioner concedes that he received relief as to this claim in state court, and was accordingly granted permission to file a belated motion for new trial and appeal of the same, he argues that this failure "caused confusion that led to some of his colorable claims being procedurally defaulted in other proceedings" and is further evidence of "overall deficient performance" by trial counsel [*Id.*]. However, because Petitioner has already received relief as to this claim from the state court, the Court finds no reason to consider this claim anew in his federal habeas proceeding.

Petitioner appears to argue that state-court error can constitute cause to overcome his default, specifically arguing that the state court erred in failing to hold his post-conviction proceedings in abeyance after his first motion for post-conviction relief was granted.  Petitioner contends that once he was given authorization to file a belated motion for new trial and subsequent direct appeal, his ineffective assistance of trial counsel claims should have been stayed, thus preserved for review after the resolution of his second round of direct review.  [Doc. 22 at 7-8].

Under Tennessee's Post-Conviction Procedure Act, Tenn. Code Ann. 40-30-101, *et. seq*., a petitioner challenging his convictions has two potential forms of relief: (1) having the judgment of conviction set aside, pursuant to Section 40-30-111, and (2) an opportunity to pursue a delayed appeal, pursuant to Section 40-30-113.  A petitioner may seek both types of relief simultaneously.  *See, e.g.*, *State v. Dowlen*, 2004 WL 1621687, at *1-2 (Tenn. Crim. App. July 20, 2004); *Gibson v. State,* 7 S.W.3d 47, 50 (Tenn. Crim. App. 1998).

Prior to 2002, if a petitioner sought both types of relief and demonstrated that he was entitled to a delayed appeal, "the proper procedure . . . was for that court to . . . grant[] the delayed appeal and . . . enter[] a dismissal without prejudice of the collateral attack to the conviction."  *See Dowlen*, 2004 WL 1621687, at *2.  Indeed, the TCCA had expressly held that a direct appeal of a conviction and a collateral attack to that same conviction "may not" be maintained simultaneously.  *Gibson,* 7 S.W.3d at 49.  The TCCA reasoned that the post-conviction petition should be dismissed as "premature," given that the judgment was not "final" so long as direct appeal proceedings were being prosecuted, and further opined that simultaneous prosecution of post-conviction and delayed appeal proceedings may result in a waste of judicial resources.  *Id*. at 49-50.

However, in 2002, Tennessee Supreme Court Rule 28 was amended. While it specifically provided for a stay of post-conviction collateral attack proceedings pending a delayed appeal to the Tennessee Supreme Court granted by the TCCA pursuant to Tennessee Rule of Appellate Procedure 11, it did not include a stay provision for post-conviction proceedings pending a delayed appeal to the TCCA granted by the post-conviction court pursuant to Tennessee Rule of Appellate Procedure 3. Tenn. Sup. Ct. R. 28 § 9(D)(1). In 2004, the TCCA determined that the absence of a corresponding stay provision for Rule 3 delayed appeals from the post-conviction court was "co[n]spicuous" and thus concluded that the Supreme Court had sanctioned the practice of permitting delayed appeals to the TCCA and collateral attack proceedings to proceed simultaneously. *Dowlen*, 2004 WL 1621687, at *2.

Subsequent decisions from panels of the TCCA have questioned the practice of simultaneous litigation of collateral attacks and delayed direct appeals. In *State v. Coffelt*, 2006 WL 2310597, at *1-2 (Tenn. Crim. App. Aug. 8, 2006), the panel cited *Dowlen* for the proposition that the Tennessee Supreme Court had approved of the procedure "by rule;" nonetheless, it noted that it was "in the unusual position of considering a delayed direct appeal at the same time as an appeal of the denial of post-conviction relief." Several years later, in *State v. Haynes*, 2009 WL 2877631, *5-6 (Tenn. Crim. App. Sept. 9, 2009), a different panel of the TCCA questioned the rationale of *Dowlen*:

> [Rule 28] is silent with regard to whether the post-conviction proceedings should be stayed, dismissed, or decided when a trial court grants a Rule 3 delayed appeal. Multiple panels of this court have concluded that the absence of the stay provision "apparently contemplates that the collateral-attack issues will be adjudicated along with the question of the propriety of a delayed appeal." . . . In *Dowlen,* the court concluded that our supreme court had sanctioned the procedure.

> Nonetheless, despite this precedent for allowing both a post-conviction court, as well as this court, to address post-conviction issues, we must note the possible resulting unfairness to a petitioner, who could be precluded from challenging the effectiveness of his appellate counsel if the post-conviction petition is ruled upon prior to the delayed

25

appeal. We find the reasoning in *Gibson* quite persuasive with regard to the employment of a different procedure. The court in *Gibson* provided [a] well-reasoned rationale for staying post-conviction proceedings[.]

. . .

In our view, the preferable procedure is for the post-conviction court to stay any findings as to ineffective assistance of counsel claims and allow them to proceed only after the results of the delayed appeal are known.

*Id*. at *5-6 (internal citations omitted). Nonetheless, the panel followed the approach adopted by *Dowlen*, noting that it was "bound by the Rules of our supreme court and guided by prior decisions of this court." *Id*. at *6. Most recently, a panel of the TCCA questioned *Dowlen*'s holding in dicta, noting that Section 8 of Rule 28 could "[a]rguably . . . be read to require the trial court to hold the post-conviction claims in abeyance when the court finds other meritorious grounds for post-conviction relief." *Branner v. State*, 2017 WL 1224705, at *3 n.1 (Tenn. Crim. App. Apr. 3, 2017) (citing Tenn. R. Sup. Ct. 8(D)(3), which provides that "[i]n the event that the petition alleges that petitioner was unconstitutionally deprived of an appeal and was also entitled to relief on other grounds, the court shall bifurcate the proceedings and determine first whether petitioner was denied an appeal, while holding the other claims in abeyance. Those claims shall be considered after the outcome of the delayed appeal if allowed, or after the appeal of the claim, if denied.").

The Court is sympathetic to Petitioner's argument. As discussed, several panels of the TCCA have acknowledged the potential harms – both to petitioners and to the efficient operation of the state's judicial system – of allowing collateral attacks and delayed direct appeals to be litigated simultaneously. Nonetheless, the Sixth Circuit has held that habeas petitions filed in federal court pursuant to § 2254 "cannot be used to mount challenges to a state's scheme of post-conviction relief." *See, e.g.*, *Leonard v. Warden Ohio State Penitentiary*, 846 F.3d 832, 854-55 (6th Cir. 2017) (internal quotation marks omitted). Petitioner's argument regarding the state court's decision to decide his

26

remaining post-conviction claims on the merits rather than stay and abey those claims is, at its core, a challenge to Tennessee's procedures regarding post-conviction relief.  Because this Court lacks the authority to consider such a challenge in this proceeding, this argument cannot provide cause for Petitioner's procedural default of his ineffective assistance of trial counsel claims.[14]

b.    *Martinez* Exception

Next, the parties argue at length about the applicability (or inapplicability) of the *Martinez* exception to Petitioner's default of these claims.  For his part, Petitioner argues that any procedural default of these issues should be excused under *Martinez* because post-conviction counsel failed to either appeal the state court's denial of these issues in his first post-conviction motion or request that these claims be held in abeyance pending the resolution of his second round of direct review [Doc. 11-1 at 12].  Respondent in turn argues that Petitioner's claims of ineffective assistance of trial counsel are not "substantial" so as to warrant application of the *Martinez* exception [Doc. 21 at 30-39].

As discussed in Subsection III(A) *supra*, *Martinez* established that "[i]nadequate assistance of counsel at *initial*-review collateral proceedings may establish cause for a prisoner's default of a claim of ineffective assistance at *trial*."  *Young v. Westbrooks*, 702 F. App'x 255, 260 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 9) (emphasis original).  The exception accordingly "permit[s] a federal habeas court to hear ineffective-assistance-of-trial-counsel claims that were not raised in state court due to initial post-conviction counsel's ineffectiveness."  *Id*. at 260.

---

[14] Nonetheless, the Court notes that at the time Petitioner's post-conviction motion was resolved in 2011, the procedure utilized by the post-conviction court was authorized by the TCCA.  Although the propriety of the *Dowlen* decision appears to be a subject of debate in Tennessee's courts, there is no doubt that the procedure employed by the post-conviction court in Petitioner's case was at the time – and continues to be – legally defensible as a matter of state law.

Since issuing its decision in *Martinez*, the Supreme Court has continuously reaffirmed its narrow scope. In *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017), the Supreme Court rejected a request to extend the scope of *Martinez* to include substantial claims of ineffective assistance of direct appellate counsel. In doing so, it noted that the "chief concern" of *Martinez* was to "ensure that meritorious claims of trial error receive review by at least one state or federal court":

> *Martinez* was concerned that a claim of trial error—specifically, ineffective assistance of trial counsel—might escape review in a State that required prisoners to bring the claim for the first time in state post-conviction proceedings rather than on direct appeal. Because it is difficult to assess a trial attorney's performance until the trial has ended, a trial court ordinarily will not have the opportunity to rule on such a claim. And when the State requires a prisoner to wait until post-conviction proceedings to raise the claim, the appellate court on direct appeal also will not have the opportunity to review it. If post-conviction counsel then fails to raise the claim, no state court will ever review it. Finally, because attorney error in a state post-conviction proceeding does not qualify as cause to excuse procedural default under *Coleman,* no federal court could consider the claim either.

> Claims of ineffective assistance of appellate counsel, however, do not pose the same risk that a trial error—of any kind—will escape review altogether . . . . A claim of appellate ineffectiveness premised on a preserved trial error thus does not present the same concern that animated the *Martinez* exception because at least "one court" will have considered the claim on the merits.

*Id*. The Court opined that expansions of *Martinez* would not only "undermine the doctrine of procedural default" and the principles of comity, finality, and federalism that the doctrine promotes, but would also "unduly aggravate the special costs on our federal system that federal habeas review already imposes." *Id*. at 2070 (citations and internal quotation marks omitted).

In keeping with the narrow interpretation of *Martinez* dictated by the Supreme Court, the Sixth Circuit has held that the exception cannot "apply to save procedural defaults that occur in appeals from initial-review collateral proceedings." *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016); *see also Abdur'Rahman*, 805 F.3d at 713 ("*Martinez* only permits ineffective assistance of post-conviction counsel to excuse the default of ineffective assistance of trial counsel claims, and

does not extend to appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.") (internal quotation marks omitted)

Again, the Court notes its sympathy for Petitioner's predicament. In 2011, the state court dismissed with prejudice all of Petitioner's remaining claims of ineffective assistance of trial counsel upon determining that he was entitled to delayed direct review proceedings based on one ground of ineffective assistance of trial counsel; the record is devoid of the factual or legal grounds for the dismissal of his remaining claims. At that time, as discussed *supra*, opinions from the TCCA were increasingly divided as to the appropriate practice for the resolution of those collateral claims remaining after delayed direct appeal has been granted; although the approach utilized by the court in Petitioner's case had been sanctioned, the procedure no doubt creates an atmosphere ripe for "possible resulting unfairness to a petitioner." *See Haynes*, 2009 WL 2877631, at *6. Despite the potential for an unjust outcome for his client, post-conviction counsel did not file an appeal of the post-conviction court's denial of Petitioner's remaining post-conviction claims.[15] Instead, he advanced only the motion for new trial. His subsequent attorney apparently proceeded with the mistaken belief that Petitioner had been granted a mulligan due to his trial attorney's poor first shot at direct review. By the time Petitioner learned that this belief was erroneous – presumably at the 2013 motion for new trial hearing, when the reviewing court concluded that all such claims had been "waived" by entry of

---

[15] Petitioner argues that post-conviction counsel was ineffective in failing to request that the post-conviction court stay and abey Petitioner's remaining claims of ineffective assistance of trial counsel pending the resolution of delayed direct review proceedings. While counsel certainly could have made such a request, the Court cannot conclude that his failure to do so was unreasonable – let alone professionally incompetent – given that the post-conviction court did not run afoul of the generally accepted practice set forth in *Dowlen*.

the 2011 order – the time for pursuing an appeal of the dismissal of his remaining post-conviction claims of ineffective assistance of trial counsel had long since passed. Thus, Petitioner – through no fault of his own – was left without recourse to obtain any further review on the merits of his claims of ineffective assistance of trial counsel.

Nonetheless, the Court is bound by the constraints of *Martinez* and its progeny, and a ruling that the exception applies in the instant case would fall far outside the confines of that binding precedent. Ultimately, *Martinez* allows a federal habeas court to consider the merits of claims of ineffective assistance of trial counsel "that were not raised in state court due to initial post-conviction counsel's ineffectiveness." However, in this case, Petitioner's post-conviction counsel did raise claims of ineffective assistance of trial counsel in the initial collateral review proceeding; in fact, Petitioner's second motion for new trial and direct appeal proceedings were the direct result of the state court finding that Petitioner had received ineffective assistance of trial counsel. The chief concern of *Martinez* – that no court would ever have an opportunity to review the merits of claims of ineffective assistance of trial counsel – is simply not implicated in this case, and the Court accordingly finds that Petitioner has not demonstrated that the *Martinez* exception applies to overcome his procedural default of these claims.

Upon review of the record, the Court finds no other basis upon which to conclude that Petitioner's procedural default of his ineffective assistance of trial counsel claims may be excused. Accordingly, this ground for relief must be **DENIED**.

2.    *Ineffective Assistance of Post-Conviction and/or Delayed Appeal Counsel*

Petitioner has argued that his post-conviction counsel was ineffective in failing to "file an appeal of right to the state appellate court, effectively abandoning the issues of ineffective assistance of counsel, when the trial court granted petitioner a motion for new trial during the post-conviction

proceedings" [Doc. 11-1 at 33]. However, given that there is no constitutional right to an attorney in state post-conviction proceedings, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 754. Accordingly, this substantive claim of ineffective assistance of counsel is not cognizable on federal review and is wholly without merit.

Liberally construing Petitioner's filing, it is possible that Petitioner intended to raise a claim for ineffective assistance of counsel against his post-conviction attorney based on her representation of Petitioner in his second direct appeal proceeding – that is, that counsel was ineffective in failing to raise issues of ineffective assistance of trial counsel in his delayed appeal after the court determined at the belated motion for new trial proceedings that such claims had been "waived" by the previous grant of post-conviction relief.[16] Such a claim would be viable in a federal habeas action, as counsel was effectively representing Petitioner on direct review, rather than in a post-conviction proceeding at that stage. However, as discussed in Subsection III(B) *supra*, any claim for ineffective assistance of appellate counsel is itself procedurally defaulted as Petitioner failed to fairly present such a claim to the state courts.

_____

[16] As mentioned previously, the order in question was not captioned "agreed order"; instead, the "ORDER" summarized the court's findings of fact and conclusions of law and was "approved for entry" by counsel for both parties [Doc. 12-13 at 91-92]. However, the signature of the attorneys on a court order "preceded by the words 'Approved for Entry' generally indicat[es] that the attorneys merely agree that the substance of the order coincides with the ruling of the court, not that the substance of the orders is the result of agreement of the parties." *Harris v. Hall*, 2001 WL 1504893, at *9 (Tenn. Ct. App. Nov. 28, 2001); *see also Scott v. Reif*, 659 F. App'x 338, 341 n.4 (6th Cir. 2016) (noting that Michigan law interprets any "stipulation as to form" and "approval for entry" as "a stipulation as to form – rather than form and substance" and that such stipulation concedes "only that the order correctly embodies the ruling of the court"). Although the Court notes its doubt that the "approved for entry" order entered in 2011 constituted a waiver of claims by Petitioner, the Court is not equipped to make such a determination, as the record before it does not include any transcript or notes regarding the hearing that led to the entry of the order. Further, as previously discussed, the Court finds no legal basis upon which to review such a determination in the instant § 2254 proceeding.

### E. Sentencing Claim (Ground 3)

Petitioner argues that his sentence is unconstitutional pursuant to *Blakely v. Washington*, as the trial court imposed a sentence above the presumptive minimum by applying aggravating factors that were not found by the jury – specifically, that Petitioner had a previous history of criminal convictions, a previous history of unwillingness to comply with conditions of release, and possessed a deadly weapon in commission of the offense [Doc. 11-1 at 8-9, 27-29]. Respondent argues that the state court's adjudication of this claim was not contrary to or an unreasonable application of *Blakely* [Doc. 21 at 20-23].[17] Alternatively, Respondent argues that even if Petitioner's sentence does in fact violate *Blakely*, such error was harmless, as a jury would clearly have concluded that the enhancement factors were proved beyond a reasonable doubt by the evidence adduced at trial [*Id.* at 23-26].

#### 1. Blakely Violation

The United States Supreme Court precedent relevant to the consideration of a claimed *Blakely* error begins in 2000 with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme

---

[17] Respondent's first argument is that Petitioner's *Blakely* claim is procedurally defaulted because it was denied based on failure to comply with a state procedural rule: namely, that the TCCA found that Petitioner had waived his *Blakely* claim by failing to raise it at his sentencing hearing [Doc. 21 at 18-19]. Given that Petitioner was sentenced on June 7, 2004, and the *Blakely* decision was not decided until June 24, 2004, it was not possible for him to raise a *Blakely* challenge at his sentencing hearing. Petitioner raised the *Blakely* claim at the first possible opportunity: in his motion for new trial, which was filed in October 2004. Ultimately, Petitioner's conviction was not yet final at the time *Blakely* was announced, and as such, there is no valid argument that *Blakely* should not apply to Petitioner's sentence.

Respondent's contention that the TCCA's denial of the *Blakely* claim was based on an adequate and independent state-law procedural ground is also lacking in merit. The TCCA's denial of the claim consisted of two sentences, first noting that the issue was waived, and that it was "moreover" lacking in merit in light of *Gomez I* [Doc. 12-11]. Because the claim was "moreover" denied on the merits, the state cannot argue that the TCCA's decision was "clearly and expressly" based on a state procedural bar, as is required for application of the independent-and-adequate-grounds doctrine. *See Lovins*, 712 F.3d at 296.

Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"; otherwise, the sentence in question may run afoul of the Sixth Amendment right to trial by jury. *Id*. at 490-500.

It was in this landscape that Petitioner was sentenced, on June 7, 2004, for his state convictions for second-degree murder and arson. Petitioner was classified as a Range I offender under Tennessee law, which subjected him to a minimum sentence of fifteen years and a maximum sentence of twenty-five years for the offense of second-degree murder; however, the presumptive sentence without the application of any enhancing or mitigating factors was twenty years. [Doc. 12-7 at 3]. At the sentencing hearing, the state argued for the application of numerous enhancement factors, relying upon "the proof that was introduced at trial" and additional facts in support of enhancing factors, including an extensive criminal history and evidence that Petitioner was convicted of driving under the influence on probation [*Id*. at 3-4].

Based on the trial record, the presentence investigation report, and the arguments of counsel, the court found three enhancement factors applicable to Petitioner's second-degree murder conviction: (1) previous history of criminal convictions in addition to that necessary to establish the appropriate range; (2) previous history of unwillingness to comply with conditions of release in the community; and (3) possession or use of a deadly weapon during the commission of the offense [*Id*. at 7].[18] The court did not specify the weight placed on the second factor, but placed great weight on the first and

---

[18] As will be discussed in detail in Subsection III(E)(2) *infra*, the application of the first and third enhancements in this case do not run afoul of the constitutional safeguards detailed in *Apprendi* and *Blakely*. The first enhancement falls within the scope of permitted judicial fact-finding under *Apprendi* and the facts supporting the third enhancement were necessarily encompassed with the jury's findings of fact in convicting Petitioner of second-degree murder.

third factors and found the enhancing factors in total sufficient to increase Petitioner's sentence to twenty-five years' from the presumptive of twenty [*Id.*]. However, in mitigation, the court considered that Petitioner "grew up in a very rough environment where there was emotional and physical abuse and he [came] to be depend[e]nt on alcohol at a very early age and his fighting was a way of life for him"; accordingly, the court reduced to sentence to twenty-four years' imprisonment [*Id.* at 8].[19]

Approximately three weeks later, the Supreme Court issued its decision in *Blakely v. Washington*, 542 U.S. 296 (2004), which "clarified that the definition of 'statutory maximum' for *Apprendi* purposes is not the high-end that a sentence may not exceed, but rather the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Lovins v. Parker*, 712 F.3d 283, 289 (6th Cir. 2013) (quoting *Blakely*, 542 U.S. at 303). In other words,

> the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment … and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (internal citation and quotation marks omitted).

On January 12, 2005, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which applied *Apprendi* and *Blakely* to the United States Sentencing Guidelines, declaring as unconstitutional the provision that made the Guidelines mandatory, and reaffirmed that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum

---

[19] The Court also applied numerous enhancement factors to Petitioner's arson conviction, enhancing that sentence to the maximum allowable sentence of six years, but reduced the sentence to five years based on the same mitigation evidence [Doc. 12-7 at 8-9]. However, because the sentence was ordered to run concurrent to Petitioner's sentence for second-degree murder, his final effective sentence was twenty-four years' imprisonment [*Id.* at 9].

authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."

On April 15, 2005, the Tennessee Supreme Court considered the applicability of *Blakely* to Tennessee's Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. § 40-35-210, *et seq.* (2003). *Gomez I*, 163 S.W.3d 632. The Tennessee Supreme Court noted that *Blakely* "[a]dmittedly . . . includes language which c[ould] be broadly construed to require" a finding that defendants' sentences were unconstitutional based on application of enhancement factors and imposition of maximum sentences predicated solely on judicial fact-finding. *Id.* at 649, 658. However, in light of *Booker*, it ultimately rejected a broad reading of *Blakely*, concluding that the relevant inquiry remained whether the Reform Act *mandated* the imposition of a sentence in excess of the presumptive sentence when a judge found an enhancement factor. *Id.* at 661 ("*Booker* explains that the mandatory increase of a sentence is the crucial issue which courts must consider in determining whether a particular sentencing scheme violates the Sixth Amendment."). Noting that the finding of an enhancement factor under the Reform Act did not mandate an increased sentence, the Tennessee Supreme Court ultimately concluded that Tennessee's sentencing scheme was not unconstitutional. *Id.*

As previously noted, Petitioner's initial direct appeal was decided by the TCCA on September 15, 2005. The Court concluded that Petitioner's *Blakely* claim was meritless, stating simply that "[*Gomez I*] held that the Sentencing Reform Act of 1989 does not violate the Sixth Amendment guarantee of a jury trial and was, thus, not affected by the *Blakely* decision." [Doc. 12-11]. Petitioner filed a petition for rehearing, which was denied [Doc. 12-12 at 20-21]. On February 21, 2006, the Tennessee Supreme Court denied Petitioner's request for permission to appeal the decision of the TCCA. [Doc. 12-2 at 2-10; *see* Doc. 12-11 at 1].

Then, on January 22, 2007, the Supreme Court issued its opinion in *Cunningham v. California*, 549 U.S. 270 (2007), invalidating California's determinate sentencing law – a law virtually identical to Tennessee's Reform Act – in light of *Blakely*.  In analyzing the law under *Apprendi*, *Blakely*, and *Booker*, the California Supreme Court concluded that, in "operation and effect," California's sentencing system "simply authorize[s] a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range."  *Id*. at 289 (discussing *People v. Black*, 113 P.3d 534 (Cal. 2005)).  Similar to the Tennessee Supreme Court in *Gomez I*, the California Supreme Court held that, because the sentencing judge retained "ample discretion" with respect to sentencing, California's determinate sentencing law did not "diminish the traditional power of the jury," and as such, did not implicate any Sixth Amendment concerns.  *Id*. at 289-90 (quoting *Black*, 113 P.3d at 544).  The Supreme Court, however, disagreed, stating, "[o]ur decisions … leave no room for such an examination."  *Id*. at 291.  The Court noted:

> We cautioned in *Blakely* that broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions.  If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.

*Id*. at 290-91.  It further rejected any comparison of California's sentencing law to the advisory federal system in *Booker*, noting that any discretion afforded to California's judge to deviate from the presumptive mid-range sentence was born from judicial fact-finding of aggravating factors, rather than from any discretion inherent to the sentencing statute itself.  *Id*. at 292-93.  The Court concluded that its "decisions from *Apprendi* to *Booker* point to the middle term specified by California's statutes, not the upper term, as the relevant statutory maximum," and that, because the sentencing law in question

"authorize[d] the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent."  *Id*. at 293.

On February 20, 2007, the Supreme Court vacated *Gomez I*, and remanded to the Tennessee Supreme Court for consideration in light of *Cunningham*.  *Gomez v. Tennessee*, 549 U.S. 1190 (2007). On remand, the Tennessee Supreme Court held that the Reform Act "violated the Sixth Amendment as interpreted by the Supreme Court in *Apprendi*, *Blakely*, and *Cunningham*."  *State v. Gomez*, 239 S.W.3d 733, 740 (Tenn. 2007) ("*Gomez II*").

There is thus no question that, if Petitioner were sentenced today, the procedure used to enhance Petitioner's sentence for his second-degree murder conviction would violate *Blakely*.  On review of a § 2254 petition, the Court is not, however, tasked with determining whether a movant's conviction or sentence is unconstitutional based on the current state of the law; rather, it must determine whether state court's decision of the claim resulted in a decision that was contrary to or involved an objectively unreasonable application of clearly established federal law at the time the state court rendered its decision.

The Court notes that issue of whether *Blakely* was clearly established prior to *Cunningham* is currently pending before the Sixth Circuit in *Owens v. Parris*, 6th Cir. Case No. 17-5488 (appeal of conditional grant of habeas corpus in *Owens v. Steward*, No. 4:14-cv-18-HSM-SKL, 2017 WL 1184178 (E.D. Tenn. Mar. 29, 2017)).[20]  In that case, Owens was sentenced above the presumptive

---

[20] In its response in the district court proceedings, the state argued only that the harmless error standard applies to *Blakely* violations and that the standard was satisfied in Owens' case; notably absent in the response was any argument that *Blakely* was not clearly established prior to *Cunningham*. *Owens*, 2017, WL 1184178, at *3.  This omission led the district court to conclude that the respondent had "conced[ed] the state court's constitutional error."  *Id*. at *8.  The state has appealed the district court's conditional grant of § 2254 relief as to the *Blakely* claim, and on appeal, argues for the first time that *Blakely* was not clearly established prior to *Cunningham*.  *See Owens v. Parris*, 6th Cir. Case No. 17-5488, at Docs. 12, 32.

sentence of twenty years for his conviction of second-degree murder, based on the sentencing court's application of two enhancement factors that were not found by the jury at trial. *Owens*, 2017 WL 1184178, at *4. Like Petitioner, Owens raised a *Blakely* challenge to his sentence on direct appeal, but the TCCA denied the claim on the basis that *Gomez I* had determined that *Blakely* did not rendered Tennessee's sentencing scheme unconstitutional. *Id*. at *4, *6.

In his § 2254 petition, Owens argued that the enhancement of his sentence based on judicial fact-finding was unconstitutional under clearly established law. *Id*. at *3. The court conducted a thorough analysis of the *Blakely* issue, and concluded that *Blakely* was clearly established prior to *Cunningham*:

> Even . . . giving the state court the benefit of the doubt – as this Court is required to do under § 2254(d)'s deferential standard – the Court finds that the state court's conclusion that Petitioner's sentence did not violate *Blakely* was contrary to clearly established federal law. In denying Petitioner's *Blakely* claim, the state court relied upon *Gomez I*'s holding that the Reform Act was not unconstitutional under *Blakely*; *Gomez I* concluded that, in light of *Booker*, the Reform Act could not offend the Sixth Amendment because it did not *require* the sentencing judge to increase a sentence upon finding an enhancement factor. This analysis, however, essentially ignored the primary holding of *Blakely*:
>
>> [T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment … and the judge exceeds his proper authority.
>
> *Blakely*, 542 U.S. at 303-04 (internal citation and quotation marks omitted). Indeed, it also ignored the fact that, in *Booker*, the Supreme Court expressly "reaffirm[ed] [its] holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244.
>
> Thus, at the time that the state court reviewed Petitioner's *Blakely* claim, it was a matter of clearly established federal law that the Sixth Amendment right to trial by jury is violated when a judge imposes a sentence in excess of the relevant statutory maximum

based on additional findings of fact that were not admitted by the defendant or proved to the jury beyond a reasonable doubt. Nonetheless, Tennessee's courts concluded that the Reform Act did not conflict with the Sixth Amendment, despite the fact that sentencing judges were permitted to enhance the presumptive mid-range – the relevant statutory maximum, as defined by *Apprendi* and *Blakely* – based on independent judicial findings of fact.

Such a result was contrary to the governing legal principles set forth in *Apprendi*, *Blakely*, and *Booker*. Indeed, the Supreme Court said as much in *Cunningham*, expressly stating that its *Apprendi* jurisprudence "leave[s] no room" for the interpretation adopted by the Tennessee Supreme Court in *Gomez I*.

*Id*. at *7-8.

Based on a thorough and independent review of the relevant precedent, the Court notes its agreement that *Blakely* – not *Cunningham* – clearly established that a state's sentencing scheme is unconstitutional where it allows for enhancement of a sentence above the maximum based upon judicial fact-finding. Despite Respondent's reliance upon *Allen v. Parker*, 542 F. App'x 435 (6th Cir. 2013), the Court concludes that the unpublished *Allen* decision does not compel a different conclusion. In dicta, a panel of the Sixth Circuit asserted that the state's concession that the petitioner's sentence violated *Blakely* and was contrary to clearly established federal law was "wrong as a matter of law." *Id*. at 439. This pronouncement was based on a brief and limited summary of the *Cunningham* decision and the subsequent invalidation of *Gomez I* and the Reform Act.[21] That is to say, the panel did not

---

[21] The entirety of the panel's discussion of *Blakely* and *Cunningham* reads as follows:

During the pendency of Allen's delayed direct appeal, the United States Supreme Court granted a writ of certiorari in *Cunningham v. California*[.] The petitioner in Cunningham challenged California's determinate-sentencing law, a hybrid scheme that, similar to Tennessee's, prescribed a presumptive sentence within the statutory range of punishment, but gave judges discretion to vary based upon findings of enhancing or mitigating factors. In his petition for certiorari, Cunningham highlighted a split among ten states as to whether such schemes were prohibited by *Blakely*. Seven states answered this question in the affirmative, holding that Blakely established a bright-line rule that prohibited judges from increasing a defendant's sentence, based upon their own fact-finding, beyond the maximum authorized by the jury's verdict or

engage in a comprehensive review and analysis of *Apprendi*, *Blakely*, and *Booker* so as to determine whether *Gomez I* was, in fact, reasonable in light of clearly established federal law. Given that this pronouncement was made in dicta in an unpublished case without the benefit of a complete review of the governing principles of *Apprendi*, *Blakely*, and *Booker*, the Court finds *Allen* unpersuasive.

To the contrary, the Court notes that those courts that have analyzed these Supreme Court opinions in conjunction – including the Second Circuit sitting *en banc* and the Ninth Circuit – have reached the same conclusion as that reached by the district court in *Owens*. *See Portalatin v. Graham*,

---

the defendant's admissions. A minority of states, including Tennessee, read *Blakely* to establish a standard by which judicial fact-finding would be permissible in sentencing so long as it was conducted within a scheme with broad discretion.

In January 2007, the Court held that sentencing schemes such as Tennessee's violated the Sixth Amendment jury-trial right. The Court explained that "[i]f the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." *Cunningham*, 549 U.S. at 290, 127 S.Ct. 856. The following month, the Court summarily vacated *Gomez I* in light of its decision in *Cunningham*. *Gomez v. Tennessee*, 549 U.S. 1190, 127 S.Ct. 1209, 167 L.Ed.2d 36 (2007). On remand, the Tennessee Supreme Court found the state's sentencing scheme unconstitutional as applied to a defendant who, like Allen, had his sentence enhanced after findings of fact by the trial judge. *State v. Gomez* [*Gomez II*], 239 S.W.3d 733, 740 41 (Tenn. 2007).

As the law stands today, it is beyond dispute that Allen's 2003 sentence violated the Sixth Amendment. However, the current state of the law is not the standard by which we assess a habeas petition. The "backward-looking language" of § 2254(d) "requires an examination of the state-court decision at the time it was made." [*Cullen*, 563 U.S. at 211]. This principle extends not only to the state of the factual record, *see ibid.*, but also to the state of the law. As the Court explained in [*Greene*, 565 U.S. 34], § 2254(d)(1) requires federal courts to assess what the state court knew and did, and to measure the reasonableness of its adjudication "'against this Court's precedents as of the time the state court renders its decision.'" *Ibid.* (quoting [*Cullen*, 563 U.S. at 182]) (internal quotation marks omitted). Accordingly, we may not disturb a state-court adjudication based upon a subsequent opinion of the Supreme Court that invalidates the state court's otherwise-reasonable legal analysis.

*Allen*, 542 F. App'x at 438-39. The panel then simply concluded that the state's concession of *Blakely* error was "wrong as a matter of law" as "elucidated in the previous section." *Id*. at 439.

40

624 F.3d 69, 83 (2d Cir. 2010) (en banc) (concluding that *Cunningham* was "dictated" and "compelled" by *Blakely*, as *Cunningham* merely "reaffirmed" the holding in *Blakely* and "applied it to a new set of facts"); *Butler v. Curry*, 528 F.3d 624, 634-36 (9th Cir. 2008) (holding that *Cunningham* did not announce a new rule of constitutional law, but rather "reiterated the[] same points" made in *Apprendi*, *Booker*, and *Blakely*, the three of which had "made courts throughout the land aware that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of defendants") (internal quotation marks omitted); *see also Means v. Lester*, 2013 WL 3992506, at *8 (W.D. Tenn. 2013) ("Although Means was sentenced less than a month before the issuance of the decision in *Blakely,* there is no dispute that the decision applies to the instant case as his sentence was not final until after *Blakely* was issued" but before *Cunningham* was issued).

The Court thus expresses its agreement with this line of precedent, and concludes that it was a matter of clearly established federal law that the Sixth Amendment right to trial by jury is violated when a judge imposes a sentence in excess of the relevant statutory maximum based on additional findings of fact that were not admitted by the defendant or proved to the jury beyond a reasonable doubt at the time that the state court reviewed Petitioner's *Blakely* claim. If the correct governing principles of *Apprendi*, *Blakely*, and *Booker* had been properly applied, the state court would have had no choice but to conclude that a *Blakely* error occurred when Petitioner's sentence was enhanced beyond the twenty-year presumptive sentence based on judicial fact-finding of enhancement factors.[22]

---

[22] The particular procedural background of this case makes the state court's error even more concerning. Petitioner correctly notes in his reply brief that his *Blakely* challenge was reasserted by counsel repeatedly during his motion for new trial proceedings from 2011 through 2013 [Doc. 22 at 5; *see* Doc. 12-16 at 10-12]. At the April 2013 hearing, the state argued not only that the claim could not be reviewed because it was previously ruled on by the TCCA, but also that the TCCA's legal ruling was correct because Petitioner's "case did not fall within the confines of *Blakely*" [Doc. 12-16 at 29-31]. Counsel for Petitioner, however, argued that the claim had not been conclusively decided, noting that by virtue of granting the motion for new trial, the court had necessarily allowed Petitioner

41

2.       *Harmless Error*

Nonetheless, it is undisputed that *Blakely* errors are subject to a constitutional harmless error analysis.  *See, e.g.*, *Lovins*, 712 F.3d at 303 ("In determining the proper remedy for a *Blakely* error, we ordinarily consider whether the error was harmless."); *Villagarcia v. Warden, Noble Corr. Inst.*, 599 F.3d 529, 536 (6th Cir. 2010) ("Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error, and accordingly, such error is subject to harmless error analysis.") (internal quotation marks omitted); *Washington v. Recuenco*, 548 U.S. 212 (2006); *c.f. Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999) (noting that the constitutional harmless error standard applies even "when the federal district court is the first court to review for harmless error."). In cases involving collateral review of state court decisions, an error is harmless "unless it had substantial and injurious effect or influence" on the outcome in question.  *Villagarcia*, 599 F.3d at 536. Stated another way, an error is not considered harmless "when the matter is so evenly balanced that the habeas court has grave doubt as to the harmlessness of the error."  *Lovins*, 712 F.3d at 303 (quoting

---

to assert "all those issues a[s] new," rendering the claims valid for consideration on the motion for new trial and on appeal of that motion [*Id*. at 51-53].  Although the Court's ruling specifically addressed a number of substantive claims – including sufficiency of the evidence, which the TCCA had decided on the merits in Petitioner's initial direct appeal – the Court did not specifically address Petitioner's *Blakely* claim [*Id*. at 70-74].  Instead, it offered a blanket pronouncement that any issue not specifically addressed was "without merit and overrule[d]," and then later stated that "[t]he sentence was the appropriate sentence for this – these crimes and based upon all the proof presented during the sentencing hearing" [*Id*. at 73, 81; Doc. 12-15 at 3-7].

Any argument that the court lacked jurisdiction to consider the claim anew fails in light of the fact that the court considered the sufficiency of the evidence claim – which was also previously decided by the TCCA – anew at the motion for new trial stage.  Additionally, the state's position that the TCCA's ruling on the merits of the *Blakely* claim was correct also fails as its ruling on the merits was premised on the correctness of the *Gomez I* decision, which had been vacated by that time in light of *Cunningham*.  Thus, even if the Court were to accept the state's argument that the law relevant to this claim was not clearly established until *Cunningham* was decided in 2007, it is clear that the state court was given an opportunity to correct this error as late as 2013 but failed to do so.

*Villagarcia*, 599 F.3d at 537); *see also United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) ("Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless").

As previously discussed, at his June 7, 2004 sentencing, the court found three enhancement factors applicable to Petitioner's second-degree murder conviction: (1) previous history of criminal convictions in addition to that necessary to establish the appropriate range; (2) previous history of unwillingness to comply with conditions of release in the community; and (3) possession or use of a deadly weapon during the commission of the offense [*Id.* at 7]. It placed great weight on the first and third factors, and found the enhancing factors sufficient to increase Petitioner's sentence to twenty-five years' from the presumptive of twenty; however, after considering mitigation factors, the court imposed a sentence of twenty-four years [*Id.* at 7-8]. Nonetheless, on November 8, 2004, although the court denied Petitioner's untimely motion for new trial – which included a claim premised on the Supreme Court's intervening decision in *Blakely* – it entered an amended judgment, reducing Petitioner's effective sentence to twenty-three years [Doc. 12-8 at 5, 7].

The sentencing court's enhancement based on Petitioner's "previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," does not offend the Sixth Amendment. *Apprendi*, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); *see also Gomez II*, 239 S.W.3d at 740 ("The trial court's application of the enhancement factor for a previous history of criminal convictions does not offend the Sixth Amendment."). The enhancement for possession or employment of a deadly weapon similarly presents no Sixth Amendment issues; given that the jury convicted Petitioner of second-degree murder at trial, the facts necessary to support this enhancement

43

– that Petitioner possessed the knife that he used to stab the victim – were necessarily found by the jury beyond a reasonable doubt.

The third enhancement factor – previous history of unwillingness to comply with conditions involving release into the community – is problematic in light of *Blakely*. Respondent's brief relies upon an unpublished district court case from 2010 to argue that the application of this enhancement is harmless error where "the presentence report and probation officer's testimony, neither of which were objected to by Petitioner during his sentencing hearing, clearly reflects Petitioner failed to comply with the conditions of a sentence involving release in the community." [Doc. 22 at 24 (citing *Ginn v. Fortner*, 2010 WL 1330155, at *9 (E.D. Tenn. Mar. 30, 2010))]. The Court finds that *Ginn* is unpersuasive in the instant matter. First, the enhancement in *Ginn* was premised on evidence – in the form of both a presentence report and the testimony of a probation officer – that the petitioner had violated the terms of his probation on three separate occasions. *Ginn*, 2010 WL 1330155, at * 8-9. In the instant case, the enhancement was based upon a single violation listed in the presentence report – that Petitioner was convicted of driving under the influence while on thirty days of misdemeanor probation [Doc. 12-1 at 67]. Notably, there was no testimony regarding this violation presented at the sentencing hearing, and in fact, it appears that the state relied upon the wrong conviction in its oral argument in support of the enhancement [Doc. 12-7 at 4].

Additionally, *Ginn* was decided before the *Lovins* decision; in that case, the same enhancement factor was at issue, but the Sixth Circuit ultimately concluded that the constitutional error was not harmless:

> The Tennessee trial judge enhanced Lovins's sentence on the basis of the judge's finding of four aggravating factors: that Lovins (1) had a history of criminal convictions or behavior, (2) had a history of unwillingness to comply with conditions of release, (3) possessed a firearm during the commission of his offense, and (4) showed no hesitation about committing a crime with a high risk to human life. Of

these four, only the existence of prior criminal convictions and the possession of the firearm could possibly be considered to be facts found by a jury beyond a reasonable doubt. And, with regard to the criminal-history factor, the judge noted that it was "not a lengthy criminal history," suggesting that this factor was not important in determining the sentence.

A finding that the error was not harmless in this case is supported by *Villagarcia,* in which we recognized that the sentencing court could end up exercising *more* discretion on remand than it had the first time around. Nonetheless, we still concluded there that "we simply cannot know whether the sentencing judge would accord the relevant factors the same weight when reassessing the matter outside the dictates of the severed provisions." 599 F.3d at 539. Such a finding is also supported by *Gomez II,* in which the Tennessee Supreme Court reviewed the judicial fact-finding of only two factors— a previous history of criminal convictions or behavior and a finding that Gomez had been a "leader" in the commission of the offense. 239 S.W.3d at 736. On application of the plain error standard, the Tennessee Supreme Court found that this judicial fact-finding had "adversely affected" a substantial right of the accused, *id.* at 741[.],

*Lovins*, 712 F.3d at 303-04; *see also Means*, 2013 WL 3992506, at *11-12 (rejecting state's "entirely speculative" argument that the judge would have imposed to same sentence absent the severed enhancements, and thus finding that error was not harmless).

The Court finds *Lovins* controlling in the instant matter, and as such, concludes that the *Blakely* error in this case was not harmless. The proof presented at trial, and thereby encompassed in the jury's verdict, did not include any facts necessary to support the enhancement for history of unwillingness to comply with conditions of release, and it is unclear that the jury would have found the facts necessary to support the enhancement based on the scant evidence presented by the state at sentencing. Because it is unclear what weight would have been given to the remaining factors and the mitigation evidence absent this enhancement, the Court finds that the matter is so evenly balanced as to give it doubt as to the injurious nature of the error.

Indeed, the procedural record in the state court leaves the Court even more convinced that the error was injurious and not harmless. Specifically, the Court notes that, when first presented with the *Blakely* issue in Petitioner's original untimely motion for new trial, the sentencing court entered an

amended judgment reducing Petitioner's sentence to twenty-three years. The record contains no oral or written statement of reasons for the one-year sentence reduction; however, a review of the grounds for relief raised at that stage leaves the Court with no doubt that the reduction could only have been based upon Petitioner's alleged *Blakely* violation. Although the reduced sentence was subsequently reversed by the TCCA due to time-based jurisdictional grounds, it is sufficient to give the Court reason to believe that the *Blakely* violation in this case ultimately resulted in a sentence more substantial than Petitioner would have been entitled to absent the violation; that is to say, the Court finds it more likely than not that the sentencing court would exercise its discretion to impose a lesser sentence absent the severed enhancement.

The Court is thus "constrained to conclude that the judicial fact-finding in [Petitioner's] sentencing was unconstitutional and that the remedy [he] requests is due." *See Lovins*, 712 F.3d at 304. The Petition for a writ of habeas corpus will be conditionally **GRANTED** with respect to Petitioner's *Blakely* claim; Petitioner's sentence will be **VACATED,** and Petitioner is to be released from incarceration, unless the State of Tennessee re-sentences him within ninety days.

### F.    Adequacy of Hearing on Collateral Review (Ground 6)

Petitioner finally argues that he was denied a full and fair evidentiary hearing on his claims during his state court post-conviction proceedings. Specifically, he argues that the trial court's hearing, which resulted in him being granted a delayed appeal, was inadequate, as it did not address the remainder of his issues and claims and as he was not allowed to testify or present witnesses in support of his argument [Doc. 11-1 at 13, 34-36]. However, in his reply brief, he concedes that this claim "is not a cognizable federal habeas corpus claim."[23] Accordingly, this ground for relief must be **DENIED**.

---

[23] Petitioner states that this claim should alternatively be construed as a Motion for an evidentiary hearing "[s]ince petitioner has never had a full and fair hearing on some of his grounds"

## IV.    CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal.  Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right.  *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to Grounds 1, 2, 4, 5, and 6.  First, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that the claims are procedurally defaulted.  Further, reasonable jurists could not disagree with the correctness of the Court's resolution of those claims that were dismissed on their merits.  Because the Court's assessment of Petitioner's claims could not be debatable by reasonable jurists, such claims are inadequate to deserve further encouragement, and the Court will **DENY** issuance of a COA.  *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

---

[Doc. 22 at 8].  Given that Petitioner has filed an independent Motion for evidentiary hearing, however, such a request is redundant and requires no further discussion.

## V.    CONCLUSION

For the above reasons, Grounds 1, 2, 4, 5, and 6 of the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 are hereby **DISMISSED**.  However, the § 2254 Petition will be conditionally **GRANTED** with respect to Ground 3, Petitioner's sentencing claim.  Petitioner's remaining Motions [Docs. 23, 24, 25] are hereby **DENIED AS MOOT**.

Because the Court has found that Petitioner is entitled to relief pursuant to § 2254, Petitioner's sentence will be accordingly be **VACATED**.  Unless the State of Tennessee re-sentences him within ninety days, Petitioner **SHALL** be released from incarceration.[24]

**IT IS SO ORDERED**.

**E N T E R :**

_____
UNITED STATES DISTRICT JUDGE

---

[24] If an appeal is taken and the Court's determination stands, the State of Tennessee must take such action within ninety days of the resolution of the appeal.